Case 1:15-cv-00172   Document 29   Filed in TXSD on 11/10/16   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
November 10, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **J&J SPORTS PRODUCTIONS, INC.,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. B: 15-cv-172 |
| | § | |
| **ROLI'S AUTO SALES, INC., et al.,** | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

On September 14, 2015, Plaintiff J&J Sports Productions, Inc. ("J&J Sports") filed a complaint against Defendants Roli's Auto Sales, Inc., d/b/a Roli's Sports Bar ("Roli's"), and Claudia Sanchez ("Sanchez"). Dkt. No. 1. The crux of the complaint is that the Defendants illegally showed a pay-per-view boxing match at their establishment without paying the required licensing fee.

On January 7, 2016, J&J Sports filed a motion for default judgment against Roli's and Sanchez, which is presently before the Court. Dkt. No. 9.

After reviewing the record and the relevant caselaw, the Court recommends that the motion for default judgment be granted as to Roli's and Sanchez.

**I. Procedural and Factual Background**

**A. Factual Background**

On September 15, 2012, a boxing match – identified as "Julio Cesar Chavez, Jr vs. Sergio Martinez Fight Program" – as well as undercard boxing matches ("the event") was broadcast via closed circuit television and encrypted satellite signal. Dkt. No. 1, p. 3. The event's rights had contractually been acquired by J&J Sports, who held the exclusive right to distribute the broadcast. Dkt. No. 1, p. 3. J&J Sports had then entered into agreements with various entities in Texas allowing them to publicly exhibit the event to their patrons in exchange for payment. Id. The event's signal was electronically coded or scrambled to safeguard against the unauthorized interception and exhibition of the event; the

1

establishments who were intended to receive the broadcast were provided with decoding equipment and the satellite coordinates necessary to retrieve it. Id.

Based upon the affidavit of an investigator hired by J&J Sports, on the night of the broadcast, Roli's – doing business as "Roli's Sports Bar" – was broadcasting the event on four televisions. Dkt. No. 9-1, p. 22. The investigator counted 50 patrons present. Id.

An attorney for J&J Sports – who is not representing J&J Sports in this case – provided an affidavit stating that Roli's did not lawfully license the event from J&J Sports. Dkt. No. 9-1, pp. 7-8.

Moreover, according to the affidavit, the programming cannot be mistakenly, innocently, or accidentally intercepted. Dkt. No. 9-1, p. 8. The affidavit identified methods that have been used to unlawfully intercept the signal and included things "such as using an unauthorized decoder or satellite access card, obtaining cable or satellite service and illegally altering the cable or satellite service to bring the signal of the Event into the establishment, or moving an authorized decoder or satellite card from its authorized location to the commercial establishment." Id.

In the complaint, J&J Sports states that Sanchez was an "owner and/or manager" of the sports bar, was an "officer and/or owner" of Roli's, "had a right and ability to supervise the activities" of the sports bar and had "an obvious and direct financial interest in the activities" of the sports bar. Dkt. No. 1, pp. 2. In a sworn affidavit filed in this case, Sanchez admitted to being the owner of the bar. Dkt. No. 22-1, p. 1. She also stated that "Roli's Sports bar no longer exists and is out of business." Id.

### B. Procedural Background

On September 14, 2015, J&J Sports filed a complaint against the defendants seeking judgment for violations of the Federal Communications Act, ("FCA"). Dkt. No. 1, p. 5 The complaint alleges that the Defendants violated either 47 U.S.C. § 553 or 47 U.S.C. § 605. Section 553 prohibits the unauthorized reception, interception and exhibition of any communications service offered over a cable system. Section 605 prohibits the unauthorized

2

reception and publication or use of communications such as the one in this case, to which J&J Sports held the distribution rights.

In the complaint, J&J Sports originally sought statutory penalties against each defendant; up to the maximum amount of $110,000.00 for willful violation of 47 U.S.C. § 605; and, up to the maximum amount of $60,000.00 for willful violation of 47 U.S.C. § 553. Id. at 5. Additionally, J&J Sports sought a permanent injunction enjoining the Defendants from "any future exhibition of unauthorized or unlicensed programs and any violation of 47 U.S.C. §§ 553 or 605." Id, p. 5. Lastly, J&J Sports sought attorneys' fees, administrative fees and pre- and post-judgment interest as to each defendant. Id.

On November 9, 2015, all of the Defendants were served with the complaint via hand-delivered personal service. Dkt. No. 5.

On December 30, 2015, after none of the defendants responded in any fashion to the complaint, J&J Sports filed a request for entry of default against all of the Defendants. Dkt. No. 6. On February 24, 2016, the Court ordered that default be entered by the clerk of the court against all defendants. Dkt. No. 11. The District Clerk's Office filed entries of default against the defendants on that same day. Dkt. Nos. 12-13.

On June 27, 2016, Sanchez and Roli's filed a motion to lift the entries of default. Dkt. No. 22. On August 15, 2016, the Court denied the motion, finding that Sanchez's neglect was willful and that the Defendants had not shown a meritorious defense. Dkt. No. 26.

## II. Applicable Law

### A. Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). After a defendant has defaulted, judgment shall be entered upon affidavit of the amount due if the plaintiff's claim is for a sum certain or a sum that can be made certain by computation. FED. R. CIV. P. 55(b). The plaintiff must also file an affidavit stating whether the defendant is in military service before the Court can issue a default judgment. 50 App. U.S.C. § 521.

Default judgments "are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." Flores v. Select Energy Servs., LLC, 486 Fed. App'x. 429, 432 (5th Cir. 2012) (unpubl.) (citing Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001)).  Moreover, plaintiffs are "not entitled to a default judgment as a matter of right, even where the defendant is technically in default." Settlement Funding, LLC. v. TransAmerica Occidental Life Ins. Co., 55 F.3d 422, 424 (5th Cir. 2009).

"In order to properly resolve [plaintiff's] motion, the Court must determine: (1) whether default judgment is procedurally warranted; (2) whether [the plaintiff's] complaint sufficiently sets forth facts establishing that [he] is entitled to relief; and (3) what form of relief, if any, [the plaintiff] should receive." U.S. v. Giles, 538 F. Supp. 2d 990, 993 (W.D. Tex. 2008).  Once default judgment is entered in plaintiff's favor, the plaintiff's well-pleaded factual allegations are taken as true. U.S. *ex rel.* M-Co Constr., Inc. v. Shipco Gen., Inc., 814 F.2d 1011, 1014 (5th Cir. 1987).

Moreover, under Rule 55(b), the Court has discretion to convene an evidentiary hearing on the issue of damages. FED. R. CIV. P. 55(b)(2).  As a rule, courts should hold evidentiary hearings to determine unliquidated damages; there is, however, an exception to this rule where damages are capable of mathematical calculation. J&J Sports Productions, Inc. v. Kuo, 2007 WL 4116209, *2 (W.D.T.X. 2007) (unpubl.) (citing James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993)).

**B. Violations of the Federal Communications Act**

Sections 605 and 553 of the Federal Communications Act govern the unauthorized exhibition of intercepted transmissions.

The unauthorized reception and publication or use of any wire or radio communications is prohibited under 47 U.S.C. § 605, which provides:

> (a)...No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605.

In a similar fashion, 47 U.S.C. § 553 governs the unauthorized reception of <u>cable service</u>. In relevant part, this section reads:

> (1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)

On its face, the FCA is a strict liability statute. <u>Joe Hand Promotions, Inc. v. Macias</u>, 2012 WL 950157, *2, (S.D.T.X. 2012) (unpubl.) (citing <u>KingVision Pay-Per-View, Ltd. v. Lake Alice Bar</u>, 168 F.3d 347, 349 (9th Cir. 1999)). Accordingly, to establish liability under either section all the plaintiff must prove is "the unauthorized exhibition of the intercepted transmission." <u>Id.</u>

Sections 605 and 553 overlap considerably in their coverage. For this reason, several courts have held that the unauthorized interception and broadcast of either satellite or cable transmissions violates both. <u>Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.</u>, 219 F. Supp. 2d 769, 774 (S.D.T.X. 2002) (collecting cases).

While the Fifth Circuit has yet to address whether a claim can be brought under both provisions, the majority of courts that have considered violations of both sections have awarded damages only under § 605, because that section allows for greater recovery by plaintiffs. <u>Id.</u> at 774-75 (collecting cases). Moreover, recovery is generally not allowed for violations of both provisions. <u>J&J Sports Productions, Inc. v. Garcia</u>, 2009 WL 2567891, *4 (S.D.T.X. 2009) (unpubl.) (citing <u>Al-Waha Enterprises</u>, 219 F. Supp. 2d at 775).

In order to hold an individual vicariously liable for the activities of an establishment, the individual must have: (1) the right and ability to supervise the activities of the establishment; and, (2) a financial interest in those activities. <u>J&J Sports Productions, Inc. v. Q Café, Inc.</u>, 2012 WL 215282, *4 (N.D.T.X. 2012) (unpubl.) (citing <u>Softel, Inc. v. Dragon Med. & Sci. Commc'ns</u>, 118 F.3d 955, 971 (2nd Cir. 1997)).

**III. Analysis**

J&J Sports has filed a motion for default judgment against all of the Defendants. To summarize what follows, the Court believes that default judgment in J&J Sports's favor is warranted against Roli's and Sanchez.

    **A. Default Judgment**

        **1. Roli's**

Default judgment against Roli's is appropriate in this case. Representatives for Roli's have "failed to plead or otherwise defend" Roli's interests in this matter, despite receiving personal service of the complaint and summons by hand delivery almost six months ago. Dkt. No. 5.

Furthermore, J&J Sports has sufficiently set forth facts entitling it to relief against Roli's. To find Roli's liable under the FCA, all J&J Sports must do is demonstrate that the establishment broadcasted the event; that J&J Sports had the exclusive proprietary right to exhibit and sub-license the exhibition of the event to closed-circuit locations; and, that the establishment did not obtain authorization from J&J Sports to display the event. Al-Waha Enterprises, 219 F. Supp. 2d at 775.

J&J Sports has established that on September 15, 2012, Roli's Auto Sales – doing business as a sports bar – was exhibiting the event on four televisions with over fifty patrons in attendance. Dkt. No. 9-1, pp. 21-22. J&J Sports has also established that it had acquired the exclusive right to distribute the event, Dkt. No. 9-1, p. 6, and that Roli's did not have authorization from J&J Sports to exhibit the event. Dkt. No. 9-1, pp. 7-8.

Roli's has not even attempted to dispute any of these facts. See U.S. v. Lawrence, 276 F.3d 193, 196 (5th Cir. 2001) (Because no party disputes the competency of the evidence, it may be relied upon for entry of default judgment). Based upon these facts, J&J Sports has pled all of the elements necessary to succeed in an action under the Federal Communications Act. Thus, J&J Sports is entitled to a default judgment against Roli's Auto Sales.

### 2. Sanchez

Default judgment against Sanchez is warranted in this case. Sanchez has failed to timely appear or otherwise defend herself in this matter. The District Clerk's Office has filed an entry of default against her. Dkt. No. 13.

As seen above, J&J Sports has proven the elements under 47 U.S.C. § 605 and § 553 to support its motion for default judgment against Roli's. This conclusion does not automatically establish claims against Sanchez. In order to hold an individual vicariously liable for the activities of an establishment, the plaintiff must prove the individual had the right and ability to supervise the activities of the establishment, and a financial interest in the activities. Q Café, Inc., WL 215282 at *4. Given Roli's's corporate existence, these requirements must be shown by J&J Sports before the Court may find any individuals liable.

The complaint alleges that Sanchez is an officer, director, shareholder or principal of Roli's; that she acted with supervisory capacity and control over the activities of September 15, 2012; and, that she received financial benefit from those activities. Dkt. No. 1. Sanchez has admitted that she was the owner of Roli's. Dkt. No. 22-1. Furthermore, public records show that she was the sole officer, director or member of Roli's corporate structure. Dkt. No. 23, p. 10.

As the owner and sole corporate officer, Sanchez would have had the right to supervise the activities of Roli's and would have a financial interest in its activities. J & J Sports Prods., Inc. v. Rest. & Taqueria Cristina, No. 3:11-CV-3104-N-BF, 2013 WL 3878589, at *5 (N.D. Tex. July 29, 2013). Accordingly, vicarious liability is appropriate as to Sanchez and a default judgment should be entered against her.

### B. Damages

In the motion for default judgment, J&J Sports requests damages solely pursuant to 47 U.S.C. § 605. Dkt. No. 9, pp. 4-6. As earlier mentioned, courts often choose to award damages under § 605 only. Al-Waha Enterprises, 219 F. Supp. 2d at 774. In the instant case that course appears appropriate. For that reason, the Court will assess damages only as provided by § 605. Those damages are assessed in favor of J&J Sports Productions and

jointly and severally against both Roli's Auto Sales and Sanchez. See J & J Sports Prods., Inc. v. Little Napoli, Inc., No. CIV.A. H-13-1237, 2014 WL 3667903, at *3 (S.D. Tex. July 22, 2014) (unpubl.) (applying joint and several liability to the establishment and its owner).

Under § 605, plaintiffs are entitled to choose between actual damages and statutory damages. 47 U.S.C. § 605(e)(3)(C)(I). J&J Sports requests statutory damages of $10,000 and additional damages of $50,000 on the grounds that defendants' actions were willful and for purposes of direct or indirect commercial advantage or private financial gain. Dkt. No. 9, pp. 4-9. Additionally, J&J Sports requests an award of costs and attorneys' fees. J&J Sports also seeks an injunction enjoining the defendants from ever intercepting another program in violation of the FCA again. Id.

As a preliminary matter, the Court notes that it has the discretion to hold an evidentiary hearing to determine the quantum of damages. See FED. R. CIV. P. 55(b)(2). In this case, though, the damages are easily calculable from the affidavits submitted by J&J Sports. Dkt. No. 9-1. Thus, an evidentiary hearing to determine damages is unnecessary. Kuo, WL 4116209 at *2.

For the reasons set forth below, damages are warranted in the total amount of $20,200, including costs and attorneys' fees, to be paid to J&J Sports by Roli's Auto Sales and Sanchez. Permanent injunctive relief, however, is not warranted, because any harms can be remedied through monetary damages.

### 1. Statutory Damages

For each violation of § 605(a), statutory damages may be awarded to plaintiffs in a "sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). J&J Sports requests the maximum amount of $10,000. Dkt. No. 9, p. 6. In § 605 cases, District Courts have calculated statutory damages employing a number of different approaches. Here, the Court recommends looking at what the defendants would have had to pay to comply with the law and trebling that amount.

The approaches employed by the United States District Courts in Texas can be divided into two categories: 1) calculating damage awards based upon the number of patrons in the

establishment at the time; or 2) awarding a flat sum for damages. Kuo, WL 4116209 at *4 (citing Time Warner Cable v. Taco Rapido Restaurant, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (collecting cases)).

Courts using the first method typically multiply the number of patrons in the establishment by either the residential pay-per-view rate or a court-determined amount. In Kuo, the Court multiplied the number of patrons by the cost of the residential pay per view rate of $54.95. Kuo, WL 4116209 at *4. Here, however, neither party has provided any evidence of the residential pay-per-view rate for the event. An alternative approach is for the Court to multiply the number of patrons by a "reasonable amount," such as $50. Joe Hand Promotions, Inc. v. Mariscal, 1:08-cv-00188, *7 (S.D.T.X. Jul. 01, 2009) (unpubl.) (citing Top Rank, Inc. v. Tacos Mexicanos, WL 21143072, 5 (E.D.N.Y. Mar. 28, 2003)).

Utilizing the second category – that is, awarding a flat sum – courts typically look at factors such as whether defendants are repeat offenders, or the cost of complying with the law. In a case similar to this one, the Southern District of Texas awarded $10,000 in damages because the defendant was a repeat offender. Garden City Boxing Club, Inc. v. Meza, 2008 WL 585094, *2 (S.D.T.X. 2008) (unpubl.). There is no evidence in this case that Roli's is a repeat offender.

Instead, the Court quantifies damages by looking at what the cost of complying with the law would have been to defendants and multiplying that cost by some factor to adequately address defendants' failure to comply. Joe Hand Promotions, Inc. v. Garcia, 546 F. Supp. 2d 383, 386 (W.D.T.X. 2008) (unpubl.) (Multiplying the cost to purchase the viewing rights, $875, times three). Trebling the cost "accounts for the money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight." Id. That approach should be applied in this case.

The investigator hired by J&J Sports estimated that 50 patrons were present. Dkt. No. 9-1, p. 21-22. J&J Sports's pricing list for commercial venues of a similar size establish that the amount that the establishment would have been required to pay to show the event would

9

have been $1,600. Dkt. No. 9-1, p. 26.  Thus, the cost to show the event, $1,600, times three results in a total of $4,800.  Accordingly, the Court should assess damages against Roli's Auto Sales and Sanchez in the amount of $4,800.

### 2. Wilfulness

Plaintiffs may also recover additional damages of "not more than $100,000 for each violation of § 605(a)," if the Court finds that the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).  J&J Sports seeks $50,000 in additional damages. Dkt. No. 9, p. 9.  The Court recommends that Roli's be ordered to pay triple the amount of statutory damages – $14,400 – for its willful violation.  The reason for this recommendation is primarily the high improbability of accidentally intercepting the signal for the event, which makes a willful, deliberate action on the part of the defendants the most reasonable inference.

While the term "willfully" is not defined by the statute, the Supreme Court has identified willfulness as a "disregard for the governing statute and an indifference for its requirements." Al-Waha Enterprises, 219 F. Supp. 2d at 776-77 (citing Cable Systems N.Y. City Corp. v. Lokshin, 980 F.Supp. 107, 114 (E.D.N.Y. 1997) (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126-27 (1985))).  J&J Sports has not offered any direct evidence that the defendants acted willfully and instead relies on the affidavit of the lawyer it hired to investigate the piracy of its events and to demonstrate the difficulty of accidentally intercepting the encrypted signal. Dkt. No. 9-1, pp. 5-11.

"Based on the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance, however, courts have held conduct such as [intercepting unauthorized signals] to be willful and for the purposes of direct or indirect commercial advantage or private financial gain." Al-Waha Enterprises, 219 F. Supp. 2d at 776.  When the Court pairs the "extreme unlikelihood that the defendant could inadvertently have acquired the signal" with the defendant's "failure to file [an] answer denying... allegations

on this issue," it may find that the violation was "committed wilfully and for purposes of direct or indirect commercial advantage." Garcia**,** 546 F. Supp. 2d at 386.  Accordingly, the Court recommends that damages be paid to J&J Sports.

To calculate the amount of damages, courts typically multiply the original damages amount by some factor. Garden City Boxing Club, Inc. v. Sacks, WL 1711478, *3 (S.D.T.X. 2008) (unpubl.).  A number of facts are considered in determining the appropriate multiplier. See Kuo, WL 4116209 at *5 (whether the defendants were repeat offenders; whether they charged a cover charge; whether they charged a premium for their food); Mariscal, 1:08-cv-00188 at *7 (whether the defendants were repeat offenders; the number of patrons who viewed the event; whether they advertised or charged a cover price)**.**  Courts then multiply the original amount by a factor ranging from three to seven.  Sacks, WL 1711478 at *3.

Here, there is no evidence of a cover charge; or that food prices were increased for the event; or that there was any advertising for the event. J&J Sports's investigator's affidavit simply states that there were approximately 50 people present. Dkt. No. 9-1, pp 21-22**.**

The Court must also consider that the purpose of this section is to deter future violations – not to destroy the defendants' business. Kuo, WL 4116209 at *5.  Multiplying original damages by a factor of three ensures that the defendants have "entirely disgorged their profits derived from illegally intercepting and broadcasting," the event, Id., without leaving the defendants insolvent.  Three times the original damages amount results in an additional amount of $14,400 in damages, based upon the willful nature of the violation.

Thus, Roli's Auto Sales and Sanchez should be held responsible for an additional $14,400 in damages for willfully intercepting J&J Sports's broadcast.

### 3. Attorneys' fees

The statutory language of § 605 mandates that the court direct the recovery of full costs, including reasonable attorneys' fees to the prevailing plaintiff. 47 U.S.C. § 605(e)(3)(B)(iii). J&J Sports requests an award for attorneys' fees based on a contingency fee of 33% of the damages award. Dkt. No. 9-1, p. 27.  That award would total $4,800.

Alternatively, in his affidavit, J&J Sports's counsel requests attorneys' fees based on a "Lodestar fee" calculation in the amount of $1,000. Id. at 4. The Court recommends the "Lodestar" approach because it would be more reasonable under the facts presented here.

The contingency fee approach is unreasonable and inappropriate when applied to this case. The evidence provided by J&J Sports's counsel establishes that J&J Sports's attorneys expended only four hours on this case. An award of $6,393 appears excessive, given both the nature and level of original effort in this case.[1] Thus, the Court should not employ the contingency fee approach.

By contrast, the "Lodestar method" is reasonable and appropriate in the instant case. Sacks, WL 1711478 at *3; Mariscal, 1:08-cv-00188 at *10. Evidence provided by J&J Sports established that $250 per hour is a reasonable fee and that four hours were expended on this case. Dkt. No. 9-1, p. 31. Therefore, the Court recommends an award of $1,000 in attorneys' fees.

Furthermore, the Court "declines to award contingent attorney's fees and costs [for possible future events]. [Plaintiff] may apply for such an award if and when such fees and costs are incurred." Sacks, WL 1711478 at *3 (quoting Nat'l Satellite Sports, Inc. v. Carmen-Garcia, No. 3:01-CV-1799-D, LEXIS 10315, *7 (N.D. Tex. 2003)).

### 4. Injunctive relief

The language governing the granting of injunctions may be found in § 605(e)(3)(B)(i). The section reads as follows:

> The court... may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section

47 U.S.C. § 605(e)(3)(B)(i)

J&J Sports requested an injunction for the purpose of enjoining the defendants from "ever intercepting or exhibiting an authorized program in violation of the [FCA] again." Dkt.

---

[1] The Court notes that there are a number of similar cases filed by J&J Sports Productions, each of which appear to copy largely from the materials and complaints filed in the others.

No. 9, p. 10.  This reasoning matches the purpose of the statute, "to prevent or restrain violations of subsection (a)." 47 U.S.C. § 605(e)(3)(B)(i).

Having said that, a permanent injunction is an "extraordinary remedy." Weinberger v. Romero– Barcelo, 456 U.S. 305, 312–13 (1982).  The standard for permanent injunctive relief includes a showing of irreparable injury that cannot be remedied through monetary damages. Dennis Melancon, Inc. v. City of New Orleans, 703 F.3d 262, 279 (5th Cir. 2012). J&J Sports has sought – and the Court is recommending that it receive – monetary damages. Accordingly, J&J Sports cannot show the type of irreparable harm necessary to support permanent injunctive relief. Id.

Additionally, J&J Sports's proposed injunctive relief would merely require the defendants to follow the law.  Such an injunction would "therefore be redundant with the FCA's existing prohibitions." J & J Sports Productions, Inc. v. El 33, LLC, 2013 WL 164521, *7 (W.D.Tex. 2013) (unpubl.).  Accordingly, J&J Sports's request for permanent injunctive relief should be denied.

## IV. Recommendation

WHEREFORE it is **RECOMMENDED** that J&J Sports Promotions, Inc.'s motion seeking default judgment be **GRANTED IN PART**, and that Roli's Auto Sales and Claudia Sanchez be ordered to pay damages to J&J Sports. Dkt. No. 9.

Roli's Auto Sales and Claudia Sanchez should be ordered to pay J&J Sports damages and costs, including attorneys' fees, totaling $20,200.  Roli's Auto Sales and Claudia Sanchez should be held jointly and severally liable for that sum.

It is further **RECOMMENDED** that J&J Sports's request for a permanent injunction be **DENIED**.

### A. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec.

1, 2009).  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking, on appeal, factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

      DONE at Brownsville, Texas, on November 10, 2016.

*[signature]*

Ronald G. Morgan
United States Magistrate Judge